# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DOE, | ) | Civil Action |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | No. 2:25cv1371 |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| CAMRYN SIMONS, | ) | |
| CHRISTOPHER HINSON, | ) | |
| MADELINE PRATT, | ) | |
| COMPUTER SCIENCE CLUB AT PITT, | ) | |
| MACKENZIE BALL, | ) | |
| ROBERT FISHEL, | ) | |
| and | ) | |
| UNIVERSITY OF PITTSBURGH | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**FILED**

SEP 08 2025

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

## COMPLAINT

Plaintiff, John Doe, by himself, hereby files this Complaint and alleges as follows:

## THE PARTIES

1.       Plaintiff, JOHN DOE ("Plaintiff"), is an adult individual resident of the

Commonwealth of Pennsylvania and was, from August 2019 to December 2024, a full time

student at the University of Pittsburgh ("Pitt" or the "University") and at all relevant times a

member of the Computer Science Club at Pitt. Plaintiff proceeds under a pseudonym in this

action to protect his privacy and safety. Plaintiff's true name and address is on file with the Court

and may be provided under seal upon request.

2.      Defendant, CAMRYN SIMONS, is an adult individual resident of the Commonwealth of Pennsylvania and was at all relevant times a member of the Computer Science Club at Pitt. Mx. Simons, who identifies as nonbinary and uses they/them pronouns, currently resides in the area of Pittsburgh, Pennsylvania.

3.      Defendant, CHRISTOPHER HINSON, is an adult individual resident of the State of California and was at all relevant times a full time student at the University of Pittsburgh and a member of the Computer Science Club at Pitt. Mx. Hinson, who identifies as nonbinary and uses they/them pronouns, currently resides in the area of San Francisco, California.

4.      Defendant, MADELINE PRATT, is an adult individual resident of the Commonwealth of Pennsylvania and was at all relevant times a member of the Computer Science Club at Pitt. Ms. Pratt currently resides in the area of Pittsburgh, Pennsylvania.

5.      Defendant, COMPUTER SCIENCE CLUB AT PITT ("CSC"), is an unincorporated association and Registered Student Organization at the University of Pittsburgh in Pittsburgh, Pennsylvania whose stated mission is "[t]o help create an engaging atmosphere for students to learn more about the field of computer science and develop professionally." As a Registered Student Organization at Pitt, CSC is bound by the University's Student Code of Conduct as well as the University's Registered Student Organizations Handbook.

6.      Defendant, MACKENZIE BALL, is an adult individual resident of the Commonwealth of Pennsylvania and a full-time staff member of the University who was at all relevant times the Computer Science Club at Pitt's faculty advisor ("Advisor"). As a full-time staff member of the University, Ms. Ball is both a Responsible Employee and Mandatory Reporter under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688 ("Title

IX"). Ms. Ball maintains a professional mailing address at 5815 Sennott Square, 3810 Forbes Avenue, Pittsburgh, Pennsylvania 15213.

7.      Defendant, ROBERT FISHEL, is an adult individual resident of the State of Massachusetts and was at all relevant times a full time student at the University of Pittsburgh who served as the President of the Computer Science Club at Pitt ("President"). Additionally, Mr. Fishel was at all relevant times employed as a Peer Tutor by the University of Pittsburgh's School of Computing and Information, a capacity in which he was both a Responsible Employee and Mandatory Reporter under Title IX. Mr. Fishel currently resides in the area of Boston, Massachusetts.

8.      Defendant, UNIVERSITY OF PITTSBURGH, is a public, state-related research university organized under the laws of the Commonwealth of Pennsylvania. The University receives federal financial assistance and is subject to Title IX of the Education Amendments of 1972. The University maintains an address at 4200 Fifth Avenue, Pittsburgh, Pennsylvania 15260.

## JURISDICTION AND NATURE OF ACTION

9.      This is a civil action seeking monetary damages, declaratory relief, and injunctive relief. Plaintiff asserts claims against the University of Pittsburgh under Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 *et seq.*) for sex discrimination; against the Computer Science Club at Pitt and its Advisor Mackenzie Ball under 42 U.S.C. § 1983 for First Amendment retaliation; against Mx. Hinson, Mx. Simons, and Ms. Pratt for Intentional Infliction of Emotional Distress (IIED); and against Mr. Fishel for Negligent Infliction of Emotional Distress (NIED).

3

10.    The University of Pittsburgh is a recipient of federal financial assistance, and by the conduct and omissions described below the University had actual notice of sex-based harassment and responded with deliberate indifference, thereby depriving Plaintiff of access to educational benefits.

11.    Plaintiff brings First Amendment retaliation claims under 42 U.S.C. § 1983 against CSC and its Advisor Mackenzie Ball. Plaintiff pleads that CSC and Ms. Ball acted under color of state law in disciplining or otherwise taking adverse actions against Plaintiff for protected speech.

12.    This Court has original jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over Plaintiff's state-law claims (including IIED and NIED) under 28 U.S.C. § 1367 because the state claims arise out of the same nucleus of operative facts as the federal claims.

13.    This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. §§1391(b)(1) and 1391(b)(2) because the events and actions complained of took place in this judicial district and the Defendants were present and conducted affairs in this judicial district at all relevant times.

## RELEVANT LAWS AND POLICIES

14.    Title IX of the Education Amendments of 1972 reads, in pertinent part, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

4

15.     The First Amendment of the United States Constitution reads, in pertinent part, "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."

16.     Article I, Section 7 of the Pennsylvania Constitution reads, in relevant part, "[T]he free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject…"

17.     Title 42, Section 1983 of the United States Code reads, in relevant part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

18.     The University of Pittsburgh's Student Code of Conduct guarantees that all University students have the right "[t]o engage in discussion, to make inquiries, to exchange thought and opinion, to publish and exchange findings and recommendations, to speak, write, or print freely on any subject, and to sponsor speakers of their choice, in accordance with the guarantees of our Federal and State Constitutions, subject only to the right of the University to make reasonable rules and regulations related thereto."

19.     The University's Student Code of Conduct also guarantees that Students have the right "[t]o be free from discrimination on the basis of race, color, religion, national origin, ancestry, sex, age, marital status, familial status, sexual orientation, gender identity and expression, genetic information, disability, or status as a veteran."

20.     The University's Registered Student Organization Handbook requires that all RSOs "[a]dhere to University policies and procedures and local, state and federal laws" and that "[a]ny violation of this Handbook may result in disciplinary action in accordance with the Student Code of Conduct."

21.     The Computer Science Club at Pitt's code of conduct stipulates that club members must "**Be respectful:** Not all of us will agree all the time, but disagreement is no excuse for poor behavior and poor manners. We might all experience some frustration now and then, but we cannot allow that frustration to turn into a personal attack. It's important to remember that a community where people feel uncomfortable or threatened is not a productive one. **Be careful in the words that we choose:** We are a community of professionals, and we conduct ourselves professionally. Be kind to others. Do not insult or put down other participants. Harassment and other exclusionary behavior aren't acceptable."

22.     The club's code of conduct also notes that "We are committed to providing a welcoming and inspiring community for all and expect our code of conduct to be honored. Anyone who violates this code of conduct may be banned from the community."

## STATEMENT OF RELEVANT FACTS

23.     Beginning on June 4, 2023, full CSC member Christopher Hinson and associate CSC member Camryn Simons, both of whom already had a long history of misconduct in CSC, began unprovokedly mocking and bullying Plaintiff in the club's Discord server.

24.     During the course of Mx. Hinson and Mx. Simon's bullying, a close friend and ally of theirs, Madeline Pratt (née Boby), joined the Discord server and joined Mx. Hinson and Mx. Simons in taunting Plaintiff.

25.    Upon information and belief, Ms. Pratt was recruited into the server by Mx. Hinson and/or Mx. Simons purely to help them bully Plaintiff.

26.    On June 11, 2023, the CSC officers issued Mx. Hinson and Mx. Simons conduct warnings for their treatment of Plaintiff.

27.    After these warnings were issued to her friends, Ms. Pratt (who did not receive a warning) objected to the warnings on the grounds that Plaintiff had made her feel "uncomfortable" in a private conversation that had taken place completely outside the context of the club on October 27, 2021, nearly two years earlier.

28.    The conversation in question was objectively inoffensive and had been explicitly solicited by Ms. Pratt, who, several years prior in a different Discord server, had publicly asked for advice about a personal matter she was dealing with.

29.    After Mx. Hinson and Mx. Simons received conduct warnings on June 11, 2023, Ms. Pratt proceeded to hijack the public CSC Discord (thus violating the CSC code of conduct's prohibition on "sustained disruption of discussion") to make her case that because of the nearly two-year-old conversation, Plaintiff was not someone whom the club should be protecting from bullying and harassment (i.e., that Plaintiff should not be afforded the same rights afforded to *all* Pitt students and CSC members).

30.    On August 24, 2023, more than two months after Ms. Pratt made her allegations against Plaintiff, CSC sent Plaintiff an email informing him that the officer team had decided to suspend him from the club's Discord server for a semester because of Ms. Pratt's alleged "discomfort" with the October 27, 2021 conversation, and Plaintiff was concomitantly removed from the Discord server and technologically barred from re-joining until January 8, 2024.

31.    The club's Discord server contains numerous facets related to furthering CSC's mission of "creat[ing] an engaging atmosphere for students to learn more about the field of computer science and develop professionally" which are not duplicated in the club's in-person meetings or events,[1] including a "Leetcode Bootcamp" which helps students prepare for computer programming interviews conducted by tech companies, a forum for asking and answering academic and job-related questions, and channels dedicated to networking with other club members and alumni for career and research opportunities.

32.    As such, suspension from the Discord server meaningfully deprived Plaintiff of material educational benefits associated with CSC membership, and, by extension, full-time, degree-seeking enrollment at the University of Pittsburgh.

33.    On August 25, 2023, Plaintiff questioned CSC President Robert Fishel ("President) and CSC Vice President Nathan Barta ("Vice President") about the grounds for his suspension, noting that CSC's Code of Conduct made no mention of "discomfort."

34.    Vice President Barta conceded that "[t]he code of conduct indeed does not contain the word 'discomfort,'"[2] before going on to make the bizarre statement that Plaintiff's suspension was for "breach of the code of conduct, not the substance of the accusations made against [Plaintiff]."

---

[1] Consider that Plaintiff secured his current employment offer by responding to a job advertisement posted in the CSC Discord and which was not duplicated outside the Discord server. Similarly, in addition to other methods by which he and other CSC members have "learn[ed] more about the field of computer science and develop[ed] professionally" through the Discord server, Plaintiff has personally witnessed several *other* CSC members obtain jobs, internships, and research positions through participation and networking in the Discord server.

[2] Consider that a right-leaning CSC member might feel "uncomfortable" with a left-leaning CSC member endorsing a left-wing political candidate in the Discord, or vice versa; however, in addition to being constitutionally protected, such speech is objectively inoffensive and in no way violates the University's or CSC's code of conduct. Accordingly, there is no scenario in which sanctioning a club member based purely on accusations of subjective "discomfort" can be justified.

35.     Despite repeated inquiries from Plaintiff, neither President Fishel nor Vice President Barta would clarify in what way Plaintiff "breach[ed] . . . the code of conduct," and to this day Plaintiff does not know how the officers believe he did so.

36.     On August 26, 2023, after a monthslong period in which Plaintiff had been the victim of severe, unprovoked bullying from other CSC members as well as a suspension from CSC's Discord server that he knew would meaningfully deprive him of material educational benefits and opportunities, Plaintiff suffered a severe mental and emotional breakdown on campus which resulted in Pitt Police being summoned.

37.     The responding Pitt Police officers took Plaintiff to the nearby UPMC Western Psychiatric Hospital for a psychiatric evaluation, and Plaintiff subsequently began therapy sessions with the University Counseling Center ("UCC") at Pitt.

38.     On August 30, 2023, Plaintiff had a Zoom meeting with Advisor Ball and Vice President Barta to appeal his suspension.

39.     After Vice President Barta presented the club's case against Plaintiff and Plaintiff presented his defense, at the conclusion of this meeting Advisor Ball reduced the length of Plaintiff's suspension from a full semester to half a semester pending further review.

40.     On September 7, 2023, Plaintiff had a follow-up appeal meeting with Advisor Ball, President Fishel, and Vice President Barta.

41.     At this second appeal meeting, Advisor Ball, with President Fishel and Vice President Barta as witnesses, informed Plaintiff that she and the officer team would be *reducing* Plaintiff's suspension to a conduct warning, with the stipulation that if Plaintiff made *anyone* feel uncomfortable for *any* reason in the future, Plaintiff would be permanently banned from the Discord with no opportunity to appeal.

42.     Advisor Ball, with President Fishel and Vice President Barta as witnesses, clearly indicated that the reason for Plaintiff's warning was the same as the reason for his original suspension – i.e., Ms. Pratt's alleged "discomfort" with a nearly two-year-old private conversation that took place completely outside the context of the Computer Science Club at Pitt (thus placing it outside of the club's jurisdiction).

43.     Advisor Ball, with President Fishel and Vice President Barta as witnesses, also made it explicitly clear to Plaintiff that all four of Plaintiff, Mx. Hinson, Mx. Simons, and Ms. Pratt would be under "the same warning."

44.     CSC emailed Plaintiff a written copy of this warning, which informed Plaintiff that "[a]ny *further* misconduct is grounds for a permanent ban from the CSC Discord" (emphasis original), on September 8, 2023.

45.     Per Advisor Ball (with President Fishel and Vice President Barta as witnesses), all four of Plaintiff, Mx. Hinson, Mx. Simons, and Ms. Pratt were under this "same warning."

46.     Later on September 8, 2023, the technological block on Plaintiff's membership in the CSC Discord server was lifted and Plaintiff was permitted to re-join the server.

47.     At 8:13PM Eastern Daylight Time (EDT) on September 9, 2023, while Plaintiff was responding to an uninvolved CSC member's concern and not engaging with any of Mx. Hinson, Mx. Simons, or Ms. Pratt, Mx. Hinson directly and unprovokedly insulted the male, cisgender Plaintiff as follows: "even the actual school of computing and information does not dick ride this hard for the school of computing and information."

48.     Mx. Simons then reacted to Mx. Hinson's remark with an emoji indicating approval of and expressing agreement with Mx. Hinson's remark.

49.     Mx. Simons also reacted to one of Plaintiff's messages with a derogatory emoji, continuing their own bullying and harassment of Plaintiff.

50.     Mx. Hinson's sexually-charged and homophobic insult constituted a continuation of the bullying and harassment that began in June and suggests that their harassment was at least in part motivated by what they perceived as homosexuality or lack of traditional masculinity on the part of Plaintiff.

51.     Mx. Hinson and Mx. Simon's conduct thus violates Title IX, which prohibits discrimination "on the basis of sex."

52.     Mx. Hinson and Mx. Simons' conduct also violated CSC's code of conduct, which, in addition to requiring that all members "[b]e respectful" toward one another and noting that "disagreement is no excuse for poor behavior and poor manners," also requires that members "[b]e kind to others. Do not insult or put down other participants."

53.     Accordingly, in addition to violating Title IX, Mx. Hinson and Mx. Simons' conduct also violated CSC's code of conduct at least twice over.

54.     Per Advisor Ball (with President Fishel and Vice President Barta as witnesses) issuing all four of Plaintiff, Mx. Hinson, Mx. Simons, and Ms. Pratt conduct warnings with the stipulation that any further misconduct from any of them would result in a permanent ban from the Discord, Mx. Hinson and Mx. Simons should therefore have been permanently banned from the Discord server for their continued bullying and harassment of Plaintiff.

55.     Plaintiff brought Mx. Hinson and Mx. Simons' conduct to the attention of President Fishel and Vice President Barta at 12:39AM EDT on September 10, 2023, as soon as Plaintiff saw Mx. Hinson's remark and Mx. Simon's amplification of it.

56.     Neither President Fishel nor Vice President Barta responded to Plaintiff or took any action against Mx. Hinson or Mx. Simons for their blatant misconduct.

57.     As a result of the mental and emotional distress he was experiencing from ongoing bullying, the CSC officers' inaction on said bullying, as well as unjustified disciplinary action from CSC itself, on September 11, 2023, Plaintiff was constructively forced to resign from a paid, part-time teaching assistant position that he held for the Fall 2023 semester, resulting in measurable financial loss.

58.     Unbeknownst to Plaintiff, this mid-semester resignation barred Plaintiff from being re-hired as a teaching assistant in subsequent semesters,[3] resulting in even *further* financial loss.

59.     Plaintiff followed up directly with President Fishel about Mx. Hinson and Mx. Simons' conduct on September 19, 2023, arguing that insultingly accusing someone of "dick rid[ing]" violates CSC's code of conduct and that Mx. Hinson and Mx. Simons should therefore be actioned.

60.     President Fishel responded on September 19, 2023: "Frankly I don't think it's really that deep. Chris is just disagreeing with you in their crude way - It's definitely not the phrase I would've used but it's just them voicing their opinion as far as I personally see it."

61.     In other words, President Fishel saw no issue with Mx. Hinson and Mx. Simons insultingly accusing Plaintiff of "dick rid[ing]" (a concrete violation of CSC's code of conduct) in near real-time, but took severe issue with Plaintiff offering Ms. Pratt completely inoffensive and explicitly solicited advice completely outside the context of the club nearly two years earlier,

---

[3] At this point, Plaintiff was the longest-serving undergraduate teaching assistant (UTA) in the University's computer science department, with seven consecutive semesters of highly-rated service under his belt. As such, notwithstanding his Fall 2023 resignation, Plaintiff almost certainly would have been re-hired as a UTA for the Spring 2024 semester (for which he applied and was rejected for the aforementioned procedural reason).

indicating a clear double standard in how the club handles complaints of "discomfort" coming from male versus female club members.

62.   Given the officer team's inaction, Plaintiff escalated his concerns to Advisor Ball on September 25, 2023.

63.   Advisor Ball did not respond to Plaintiff until October 18, 2023, when she said in an email that she saw "no malice at all, no intent to inflict injury at all" in Mx. Hinson and Mx. Simons' conduct – despite the fact that she somehow saw intent to harass or cause "discomfort" in Plaintiff offering Ms. Pratt (whom Plaintiff at the time considered a friend) good faith, explicitly-solicited advice.

64.   Advisor Ball even suggested that Plaintiff take the "dick rid[ing]" remark as a "compliment" – something Advisor Ball (who remains the advisor for the Women in Computer Science Club at Pitt) certainly would not have suggested to a similarly situated female student.

65.   Given the inaction on the part of both CSC's officer team and advisor, Plaintiff escalated the matter to an assistant director in the Student Organization Resource Center (SORC) at Pitt.

66.   After the SORC assistant director followed-up with Advisor Ball about Plaintiff's concerns, Advisor Ball sent Plaintiff informing him that, as a result of their behavior on September 9, 2023, Mx. Hinson and Mx. Simons had been sent "the same" warning Plaintiff was sent on September 8, 2023.

67.   However, Advisor Ball (with President Fishel and Vice President Barta as witnesses) had, in his second appeal meeting on September 7, 2023, previously informed Plaintiff that all four of Plaintiff, Mx. Hinson, Mx. Simons, and Ms. Pratt were *already* under "the same warning."

68. In other words, in response to their conduct on September 9, 2023, Mx. Hinson and Mx. Simons were given nothing but a conduct warning *that they had already been given*.

69. As such, no net action was taken against Mx. Hinson and Mx. Simons, suggesting deliberate indifference to the plight of Plaintiff and the sexually-charged harassment and bullying that he was facing.

70. Finding this unsatisfactory, Plaintiff escalated the matter to the director of the SORC, DaVaughn Vincent-Bryan ("Director").

71. Plaintiff and Director Vincent-Bryan had a Zoom meeting on November 14, 2023, during which Plaintiff filled him in as to the details of Mx. Hinson and Mx. Simons' bullying and the Computer Science Club at Pitt's inaction on it, and indicated that his *own* conduct warning should be lifted since neither the CSC officers nor advisor had informed him of any way in which he had violated the club's code of conduct.

72. Director Vincent-Bryan did not get back to Plaintiff until 8:42AM EST on January 3, 2024, when he falsely stated in an email that there had been an "argument" in the CSC Discord involving Plaintiff, Mx. Hinson, Mx. Simons, and Ms. Pratt in June of 2023.

73. No such argument ever occurred.

74. Director Vincent-Bryan also falsely stated that Advisor Ball clarified during Plaintiff's appeal meetings that his conduct warning was due to the nonexistent argument "itself" and not the October 27, 2021 conversation that Plaintiff had with Ms. Pratt completely outside the context of CSC, directly contradicting what Advisor Ball (with President Fishel and Vice President Barta as witnesses) told Plaintiff during Plaintiff's second appeal meeting on September 7, 2023.

14

75.    Director Vincent-Bryan went on to say in the email that, based on these false "facts," he did "not find sufficient reason at this point" to lift Plaintiff's conduct warning, despite the complete lack of any misconduct on Plaintiff's part.

76.    Plaintiff responded to Director Vincent-Bryan at 12:22PM EST on January 3, 2024, pointing out (with screenshot evidence) the inaccuracies in Director Vincent-Bryan's understanding of the matter and arguing that the Director had not produced any evidence of wrongdoing on Plaintiff's part (which the Director indeed had not).

77.    Despite the screenshot evidence of wrongdoing on the part of Mx. Hinson and Mx. Simons, Director Vincent-Bryan refused to investigate further or take any further action (i.e., he refused to carry out his duties as the Director of SORC to ensure that CSC, as a Registered Student Organization at Pitt, abided by both its own as well as the University's code of conduct).

78.    At 8:00PM EDT on June 25, 2024, Ms. Pratt unprovokedly attacked Plaintiff in the CSC Discord server, continuing the pattern of harassment and bullying that began a year earlier.

79.    On November 4, 2024, Plaintiff submitted a complaint against the Computer Science Club at Pitt, Advisor Ball, and Vice President Barta[4] to the Title IX office, which forwarded the complaint to the University of Pittsburgh Office of Compliance, Investigations and Ethics.

80.    In the complaint, Plaintiff alleged gender discrimination with regards to how the club handled the female Ms. Pratt's complaint of "discomfort" with a private conversation from October 27, 2021 that took place completely outside the context of the club (i.e., immediately

---

[4] President Fishel had since graduated from the University and was therefore outside the University's jurisdiction, which is why Plaintiff did not name him as a respondent in the complaint.

15

suspending Plaintiff from the club's Discord server) versus how the club handled the male

Plaintiff's complaint of discomfort with Mx. Hinson and Mx. Simons publicly accusing him of

"dick rid[ing]" (which President Fishel said he didn't think was "that deep" and which Advisor

Ball suggested that Plaintiff take as a "compliment") publicly *within* the club.

81.    This gender discrimination is in fact codified in the Computer Science Club's

code of conduct, which states that the club "prioritizes marginalized people's safety over

privileged people's comfort. We will not act on complaints regarding: 'Reverse' -isms, including

'reverse racism', **'reverse sexism',** and 'cisphobia'" (emphasis added).[5]

82.    Plaintiff met in-person with investigators from the Office of Compliance,

Investigations and Ethics on January 16, 2025, where he provided them with more details about

the relevant parties and facts.

83.    Plaintiff received an investigation outcome letter from the Title IX office via

email on April 4, 2025.

84.    The outcome letter was signed by the University's Vice Chancellor and Chief

Diversity Officer, Dr. Clyde Wilson Pickett ("Vice Chancellor"), and CC'd to the Assistant Vice

Chancellor of the CIE office, the Interim Deputy Title IX Coordinator, as well as the

representative of the Title IX office to whom Plaintiff originally submitted the complaint.

85.    The outcome letter claimed that the CIE "conducted a thorough, neutral, fact-

finding inquiry into [Plaintiff's] discriminatory harassment complaint."

---

[5] Cf. the recent Supreme Court case *Ames v. Ohio Department of Youth Services*, 605 U.S. _ (2025) in which the Court unanimously ruled that "reverse discrimination" (as alleged by a straight woman who twice saw gay colleagues be promoted over her) is illegal and does not require meeting a higher burden of proof than "conventional" discrimination does.

86.     However, the letter went on to say that "[t]he CIE Office confirmed that the only Respondent affiliated with the University is Nicholas Bartha [*sic*]," and that Vice President Barta did not violate any University anti-discrimination policies.

87.     In other words, the CIE investigation *completely ignored* the Computer Science Club at Pitt and Advisor Ball (both of whom were and still are affiliated with the University) as Respondents and got the third Respondent's name wrong.

88.     Despite the egregiously incomplete nature of the investigation, the CIE dismissed Plaintiff's complaint with the stipulation that Plaintiff could appeal the dismissal to Vice Chancellor Pickett.

89.     Plaintiff emailed Vice Chancellor Pickett on April 5, 2025, indicating that he would like to appeal his complaint's dismissal on the grounds that the investigation completely ignored two of the three named Respondents.

90.     Vice Chancellor Pickett replied to Plaintiff via email on April 28, 2025, in which he notified Plaintiff that, "[a]fter completing a second review of the information, I have decided to uphold the dismissal of the complaint, as the alleged misconduct does not constitute a violation of the University's Nondiscrimination Policy."

91.     Vice Chancellor Pickett did not provide any details as to what his "second review of the information" entailed or provide any reasoning as to how he reached the conclusion that "the alleged misconduct does not constitute a violation of the University's Nondiscrimination Policy."

92.     Plaintiff replied to Vice Chancellor Pickett via email (with the Assistant Vice Chancellor of the CIE Office and the Interim Deputy Title IX Coordinator in CC) on May 1,

2025, asking for these details and arguing that, given the incomplete nature of the original investigation, he was entitled to a second investigation and outcome letter.

93.    Plaintiff received no reply from any Vice Chancellor Pickett, the CIE office, or the Title IX office.

94.    Plaintiff again reached out to Vice Chancellor Pickett via email (with the Assistant Vice Chancellor of the CIE Office and the Interim Deputy Title IX Coordinator in CC) on July 10, 2025, seeking further details about his complaint's dismissal and why two of the three named Respondents were not even investigated.

95.    To date, Plaintiff has not received a reply from any of Vice Chancellor Pickett, the CIE office, or the Title IX office regarding either of his requests for more information.

## CAUSES OF ACTION

### COUNT I
### Violation of Title IX (20 U.S.C. § 1681)
### Against Defendant University of Pittsburgh

96.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

97.    Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

98.    At all relevant times, the University of Pittsburgh was a recipient of "federal financial assistance" and thus subject to Title IX.

99.    Mx. Hinson and Mx. Simons, by the conduct described above, discriminated against Plaintiff on the basis of his sex.

100.    Plaintiff informed both President Fishel and Advisor Ball of this sex-based harassment, thus imputing actual knowledge of the harassment to the University through Mr. Fishel and Ms. Ball's status as Responsible Employees and Mandatory Reporters under Title IX.

101.    Both President Fishel and Advisor Ball – and, by extension, the University – failed to act, thus showing reckless disregard and deliberate indifference to Plaintiff's Title IX rights and *themselves* discriminating on the basis of the sex in that they *did* act on a much less severe complaint made by a female CSC member.

102.    This discrimination and deliberate indifference was further compounded by Director Vincent-Bryan and Vice Chancellor Pickett's refusal to properly investigate the matter or take action against the club or its leadership, evidencing a pattern of "reverse discrimination" in which the University and its agents systematically privilege and prioritize the complaints of women over the complaints of men.

103.    Defendant, by the conduct described above, discriminated against Plaintiff on the basis of sex and thereby deprived Plaintiff of access to educational benefits provided by the University, including constructively forcing him to resign from a part-time teaching assistant position.

104.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered substantial damages including but not limited to humiliation, loss of reputation, embarrassment, inconvenience, loss of educational opportunities, mental and emotional anguish and distress and other compensatory damages in an amount to be determined by a jury and the Court.

## COUNT II
**First Amendment Retaliation Pursuant to 42 U.S.C. §§ 1983, 1988**
**Against Defendants Computer Science Club at Pitt and Mackenzie Ball**

105.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

106.    The September 8, 2023 conduct warning that CSC and Advisor Ball jointly issued Plaintiff was unconstitutional in that it violated the Free Speech Clause of the First Amendment of the United States Constitution.

107.    Under the First Amendment to the United States Constitution, Plaintiff has the right to engage in free speech.

108.    Plaintiff's private conversation with Ms. Pratt that took place completely outside the context of the club on October 27, 2021 was objectively inoffensive and thus a textbook exercise of free speech.

109.    Specifically, Plaintiff sought to advise Ms. Pratt (whom he viewed as a friend) on a personal matter that Ms. Pratt had *explicitly* solicited advice about.

110.    The Computer Science Club at Pitt's authority to discipline its members stems from the University of Pittsburgh, a public university and state actor.

111.    Accordingly, CSC is prohibited from retaliating against individuals for exercising their First Amendment rights or taking other action to prevent or discourage the exercise of such rights.

112.    Defendant's actions were taken under color of state law.

113.    By issuing Plaintiff a conduct warning with the stipulation that he could be permanently banned from the CSC Discord for even the slightest offense, Defendant retaliated against Plaintiff for his exercise of his First Amendment rights and discouraged his further exercise of such rights.

114.    Defendant's actions were sufficient to deter a person of ordinary firmness, including the Plaintiff, from exercising his First Amendment Rights.

20

115.    Plaintiff was explicitly informed that the reason for his original suspension and subsequent conduct warning was because of his private conversation with Ms. Pratt, thus establishing a causal link between Plaintiff's protected speech and the retaliatory conduct warning.

116.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered substantial damages including but not limited to humiliation, loss of reputation, embarrassment, inconvenience, loss of educational opportunities, mental and emotional anguish and distress and other compensatory damages in an amount to be determined by a jury and the Court.

## COUNT III
### Intentional Infliction of Emotional Distress
### Against Defendants Camryn Simons, Christopher Hinson, and Madeline Pratt

117.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

118.    Mx. Simons and Mx. Hinson, both of whom had a long history of misconduct in CSC began unprovokedly bullying Plaintiff beginning in June of 2023.

119.    Ms. Pratt joined Mx. Simons and Mx. Hinson in bullying Plaintiff beginning in June of 2023.

120.    Mx. Hinson and Mx. Simons continued bullying Plaintiff into September 2023, and Ms. Pratt continued bullying Plaintiff into June 2024.

121.    Defendants' harassment and bullying of Plaintiff was extreme, outrageous, and beyond all bounds of decency, showing callous disregard for Plaintiff and his humanity.

122.    As a result of Defendants' conduct towards Plaintiff, Plaintiff suffered a severe mental and emotional breakdown that required psychiatric evaluation and the initiation of psychiatric treatment.

123.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered substantial damages including but not limited to humiliation, loss of reputation, embarrassment, inconvenience, loss of educational opportunities, mental and emotional anguish and distress and other compensatory damages in an amount to be determined by a jury and the Court.

### COUNT IV
### Negligent Infliction of Emotional Distress
### Against Defendant Robert Fishel

124.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

125.    As the democratically elected president of CSC, Mr. Fishel had a duty to uphold both CSC's and the University's Code of Conduct, which not only prohibit all forms of harassment, but particularly highlight discrimination on the basis of sex, gender, and similar characteristics.

126.    Accordingly, Mr. Fishel had a special duty to Plaintiff to protect Plaintiff from harassment and discrimination.

127.    However, when Plaintiff brought Mx. Hinson and Mx. Simons' sexually-charged harassment of him on September 9, 2023, to Mr. Fishel's attention, President Fishel shrugged it off and said it wasn't "that deep" – despite the fact that President Fishel saw reason to suspend Plaintiff from the CSC Discord for a nearly two-year-old private conversation that was objectively inoffensive and non-harassing.

128.    Accordingly, President Fishel breached his duty of care to Plaintiff.

129.    This breach of President Fishel's duty of care to Plaintiff directly contributed to Plaintiff's resignation from a part-time teaching assistant position that he held, resulting in measurable financial loss.

130. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered substantial damages including but not limited to humiliation, loss of reputation, embarrassment, inconvenience, loss of educational opportunities, mental and emotional anguish and distress and other compensatory damages in an amount to be determined by a jury and the Court.

**REQUESTED RELIEF**

WHEREFORE, Plaintiff, requests judgement against Defendants as follows:

A. For appropriate declaratory relief regarding the unlawful and unconstitutional acts and practices of Defendants;

B. For appropriate compensatory damages in an amount to be determined at trial;

C. For such other and further relief to which Plaintiff may show himself justly entitled.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all causes of action and issues so triable.

Dated: September 8, 2025                          Respectfully submitted,

                                                 /s/ John Doe
                                                 John Doe (pro se)
                                                 Address on file with the Court
                                                 Telephone: On file with the Court
                                                 Email: On file with the Court